UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 07-00860 SJO |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| v. | ) ) | [Docket No. 24] |
| KEITH MCADOO, JR., | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on Defendant Keith McAdoo, Jr.'s Motion to Suppress Evidence, filed December 31, 2007. Plaintiff United States of America (the "Government") filed an Opposition, to which McAdoo replied. The Court held an evidentiary hearing and heard argument from the parties on January 22 and 23, 2008. Because the contested search violated the Fourth Amendment, McAdoo's Motion is GRANTED.[1]

I.   BACKGROUND

The Court must determine whether a warrantless search violated the Fourth Amendment. Los Angeles Police Department narcotics officers searched an apartment located at 1331½ West 37th Drive, Los Angeles, California (the "Apartment"). The officers failed to secure a warrant. They

---

[1] On January 23, 2008, the Court orally granted McAdoo's Motion and now issues this written order to ensure that the record accurately reflects the basis for the Court's decision.

believed that Keith McAdoo, a probationer subject to warrantless searches, resided at the Apartment. A warrantless probation search of a residence is lawful only if the searching officers had probable cause to believe that the probationer lived there. This is a fact-intensive inquiry.

The Court finds that the officers knew the following facts before searching the Apartment:[2]

On June 14, 2007, an anonymous informant called the Los Angeles Police Department claiming that a "light-skinned black male" was selling large amounts of crack cocaine from the Apartment.[3] That evening, four narcotics officers investigated the tip. For about four hours, the officers staked out the Apartment in two unmarked cars. During this time, the officers saw a man fitting the informant's description – later identified as Keith McAdoo – behaving suspiciously. Throughout the evening, McAdoo repeatedly left the Apartment from the back entrance, made cell phone calls while looking down a rear alleyway, and then went back inside.

Later that evening, the officers witnessed what appeared to be a drug deal. McAdoo left the Apartment through the backdoor, walked down the rear stairway to a secure parking area, entered a white Honda, opened the parking security gate from within the car, and drove down an alleyway behind the apartment complex. The officers followed McAdoo, who later pulled over to pick up a woman. As the officers drove past McAdoo's car, one officer saw him hand an off-white substance to the woman. After the woman got out of the car, McAdoo drove back to the Apartment, parking the car behind the secure gate. He then used a key to open a security door and enter through the Apartment's backdoor.

Four days later, the officers returned to the Apartment and again saw the white Honda in the parking area. A woman – later identified as Charisse Turner – pulled her Jeep into the Apartment's front driveway. Turner walked up to the Apartment, where McAdoo greeted her and let her in. About two minutes later, Turner left, carrying an off-white substance in her hand.

---

[2] In making its finding of facts, the Court evaluated the testimony of Officers Pantianida, Mkrtchyan, and Sinclair, Probation Officer Hicks, Kenya Johnson, and Keith McAdoo, Jr. during the evidentiary hearing held January 22, 2008, and all exhibits admitted into evidence.

[3] The tip did not identify the name of the "light skinned black male" nor did it provide any further physical description.

The narcotics officers, who were not in uniform, requested that uniformed officers stop Turner. Uniformed officers responded to the call, stopping Turner and patting her down. These officers found what appeared to be crack cocaine inside Turner's shirt and informed the narcotics officers of this find.

Later that same evening, the narcotics officers saw McAdoo and a woman – later identified as Kenya Johnson – leave the Apartment in the white Honda. The officers noticed that McAdoo was not wearing a seatbelt and requested that uniformed officers stop his car. Two uniformed officers answered the narcotics officers' request.

During the traffic stop, McAdoo informed a uniformed officer that he was on probation. When the narcotics officers arrived, they learned McAdoo's name for the first time. McAdoo handed the officers his California driver's license, which indicated that his address was 1123 West 75th Street, Los Angeles, California.

The narcotics officers searched McAdoo and the white Honda, finding keys in McAdoo's pocket and an electronic gate "clicker" in the car. When the officers ran the car's license plate, they discovered the white Honda was registered to Hertz Ren A Car. The officers also found documents indicating the car was leased to Kadmiel McAdoo, not Keith McAdoo.

One of the narcotics officers called a probation officer, who confirmed that McAdoo was on probation and had consented to warrantless searches of his "property" as a condition of probation. The probation officer informed the officer that McAdoo had reported his address as 1123 West 75th Street, Los Angeles, California, the same address on McAdoo's license.

Without a warrant, the narcotics officers left to search the Apartment. One officer used the gate clicker to open the parking security gate of the apartment building, then used the keys to open a security door and the door to the Apartment. Once inside the Apartment, the narcotics officers discovered two loaded handguns, crack and powder cocaine, and drug trafficking paraphernalia (including digital scales, razor blades, and sandwich bags).

Now, McAdoo moves to suppress all evidence found at the Apartment, arguing that the warrantless search violated the Fourth Amendment.

## II. DISCUSSION

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search or seizure is unreasonable "unless it falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002); *see also United States v. Lowe*, 999 F.2d 448, 451 (10th Cir. 1993) ("The warrantless search of a home is the chief evil against which . . . the Fourth Amendment is directed.") (internal quotation marks omitted). Evidence discovered because of an unreasonable warrantless search must be suppressed. *Hudson v. Michigan*, 126 S. Ct. 2159, 2163 (2006).

One exception to the warrant requirement permits warrantless searches that are authorized by valid probation or parole conditions.[4] *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987) ("The [warrantless] search of Griffin's residence was 'reasonable' . . . because it was conducted pursuant to a valid regulation governing probationers."); *see also Morrisey v. Brewer*, 408 U.S. 471, 480 (1972) ("[Probationers do not enjoy] the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.").

As a condition to probation, McAdoo agreed to "[s]ubmit to searches and seizures of [his] person and property at any time of the day or night, by a Peace Officer or Probation Officer, with or without a warrant, probable cause[,] or reasonable suspicion." (Mot. Ex. C.) A "warrantless, suspicionless" search of a probationer's residence is a valid probation condition. *United States v. Lopez*, 474 F.3d 1208, 1214 (9th Cir. 2007). "Before conducting a warrantless search pursuant to a [probation] condition, law enforcement officers must have probable cause to believe that the [probationer] is a resident of the house to be searched." *Motley v. Parks*, 432 F.3d 1072, 1078 (9th Cir. 2005).

In the context of determining a probationer's "residence," probable cause is a "relatively stringent standard." *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006). The Court must evaluate the "totality of the circumstances," *United States v. Rodriguez*, 464 F.3d 1072, 1078 (9th

---

[4] Because probationers are constitutionally indistinguishable from parolees under the Fourth Amendment, *United States v. Lopez*, 474 F.3d 1208, 1214 & n.5 (9th Cir. 2007), this Order may substitute the term "probationer" in cases referring to a "parolee."

Cir. 2006), from the perspective of a "reasonable and prudent" person, *Motley*, 432 F.3d at 1082. "[T]he facts known to the officers at the time of the search must have been sufficient to support a belief, in a '[person] of reasonable caution,'" that the probationer lived at the residence searched. *Howard*, 447 F.3d at 1262 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

In *United States v. Howard*, the Ninth Circuit surveyed thirty years of relevant caselaw and noted four "patterns" among those cases in which the court found probable cause:

    (1)    the probationer "gave [the officers] good reason to suspect that the [probationer] was using [the searched home] as his home base";

    (2)    the probationer had a key to the searched residence;

    (3)    the probationer (or someone close to him) admitted that he resided at the searched home; and

    (4)    the probationer "did not appear to be residing at any address other than the one searched."

447 F.3d at 1266. These patterns are not required elements, but cases upholding a search typically contain at least three of the *Howard* patterns.[5]

    A.    <u>The Officers Had Good Reason to Believe that McAdoo Was Using the Apartment as His Home Base</u>.

"In each of [the cases finding probable cause], the officers had directly observed something that gave them good reason to suspect that the [probationer] was using his unreported residence as his home base." *Howard*, 447 F.3d at 1265-66. This is the one pattern that undoubtedly must be present.

Here, the officers surveilled the Apartment on the nights of June 14 and 18, 2007. McAdoo was there both evenings. He entered and exited the Apartment, often alone, using the back entrance instead of the front entrance. McAdoo used a car that was parked in a secure parking area. The officers did not see anyone else enter or exit the Apartment alone during their six hours

---

[5] The *Howard* court, in finding that the officers did not have probable cause, noted that the facts known to the officers failed to fit any of the four "patterns." *Id.* at 1266 ("None of these commonalities is presented by the facts of this case.").

5

of surveillance. Further, McAdoo received a guest. When Turner arrived at the Apartment on June 14, it was McAdoo who greeted her and led her inside. The entire time that the officers watched the Apartment, they did not see anything to indicate that McAdoo did not live there. The officers had good reason to believe that McAdoo was using the Apartment as his home base.

However, these facts are not particularly strong when compared to other Ninth Circuit cases. McAdoo did not conduct any domestic activities, such as taking out the trash or carrying laundry. *See United States v. Dally*, 606 F.2d 861, 862 (9th Cir. 1972) ("[Law enforcement officers] photographed [the probationer] taking out the garbage [and] bringing in his laundry . . . .").

Further, the officers' observations were limited to the early evening hours, when visitors are common. If the officers had seen McAdoo at the Apartment after midnight or during the early morning, they would present a stronger case for probable cause. *See, e.g., United States v. Conway*, 122 F.3d 841, 843 (9th Cir. 1997) ("Police observed [the probationer] leaving [the searched residence] at 8:45 a.m."); *Dally*, 606 F.2d at 862 ("[Law enforcement officers] concluded that [the probationer's] car had been there overnight . . . .").

Finally, the officers were not aware of any personal possessions that McAdoo may have kept at the Apartment. *See, e.g., Conway*, 122 F.3d at 843 ("[The probationer admitted] that 'his' dog was [at the searched residence] . . . . [The officers] observed mail and notes addressed to [the probationer inside the residence before the search]."); *Dally*, 606 F.2d at 862 ("[Law enforcement officers] saw [the probationer's] car near [the searched] apartment . . . ."). While the officers initially believed that the white Honda belonged to McAdoo, they later discovered it had been rented by someone else.

Although this pattern is present, it is weaker than in other cases finding probable cause.

B.  <u>McAdoo Possessed a Key to the Apartment</u>.

A key provides a person unrestricted access to a home, a strong indicator of ownership. The officers saw McAdoo enter the Apartment using a key and gate clicker. When McAdoo was pulled over, he had the key in his pocket and the gate clicker in the car.

Yet, the totality of the circumstances weakens the value of this fact. First, the officers were aware of other facts indicating that McAdoo's relative lived at the Apartment. McAdoo was driving

a car leased to Kadmeil McAdoo, who (given their identical last names) was likely related to Keith McAdoo. On both days the officers surveilled the Apartment, Kadmeil McAdoo's car was parked in a secure area. This weakens McAdoo's connection to the Apartment and makes it more likely that McAdoo possessed a key to the Apartment not because he lived there, but because his relative lived there.

Second, the officers were aware that the Apartment was located in a dangerous neighborhood, where security of the home is a high priority. Residents of these neighborhoods are more likely to provide keys to invited guests to maintain the security of the home, rendering the possession of a key a weaker indicator of residence.

Although this pattern is present, it is weaker than in other cases finding probable cause.

C.    McAdoo Did Not Admit to Living at the Apartment.

When someone identifies the probationer as a resident of the searched residence, this identification increases the probability that he lives there. *See, e.g.*, *United States v. Watts*, 67 F.3d 790, 795 (9th Cir. 2001) ("[The probationer's girlfriend] told police that she and [the probationer] lived there together."); *Conway*, 122 F.3d at 843 ("[The probationer] identified a bedroom in the house as 'his' . . . ."). While this pattern strongly supports probable cause when present, its absence does not weigh against probable cause. The strength of this pattern stems from its rarity. *Howard*, 447 F.3d at 1266 ("It will often be against a parolee's penal interests to admit to living at an unreported residence; such an admission is thus unlikely to be motivated by self-interest and is therefore entitled to some credibility.").

Here, there is no indication that McAdoo (or anyone else) identified the Apartment as his residence. The officers received an anonymous tip that a "light-skinned black male" was selling a large amount of cocaine. This tip did not claim that the man selling cocaine lived at the Apartment, only that the man was selling drugs from the Apartment. *Cf. United States v. Harper*, 928 F.2d 894, 896-97 (9th Cir. 1991) ("[A]n uncorroborated source had informed [the police] that [the probationer] lived [at the searched residence].").

Although this pattern is not present, its absence adds little to the probable cause analysis.

D.    The Officers Had No Information on McAdoo's Reported Residence.

When a probationer is rarely at his reported residence and has no personal belongings there, it suggests that he does not live there. *Watts*, 67 F.3d at 795; *Conway*, 122 F.3d at 842. Here, the officers knew that McAdoo had reported that he was living somewhere other than the Apartment. The probation office informed the officers that McAdoo's reported address was 1123 West 75th Street – the same address on McAdoo's driver's license. Still, the officers took no steps to find out whether McAdoo no longer lived at his reported address.

The presence of this pattern is particularly important to finding probable cause. *See Howard*, 447 F.3d at 1265 ("Only in *Harper* did we uphold a search when police lacked grounds to believe that the [probationer] had reported a sham address – and in *Harper* the [probationer] did not have any reported address on file.") Under Ninth Circuit precedent, a probationer's residence is the place he "live[s]" or uses as his "home base," implying that a probationer can only have one residence. *Id.* at 1262, 1266. Further, the probationer's reported residence holds a presumption of validity. *Cf. id.* at 1265 (observing that almost all cases finding probable cause contained facts that the probationer no longer lived at his reported address, thereby nullifying its presumptive validity). Where law enforcement officials are notified that a probationer has reported a different address than the one they wish to search, a person of reasonable caution would further investigate whether the probationer still lived at the reported address.[6]

This pattern is not present and weighs against finding probable cause.

E. <u>Under the Totality of the Circumstances, the Officers Did Not Have Probable Cause to Believe that McAdoo Resided at the Apartment</u>.

Here, only two of the *Howard* "patterns" are present. In most of the cases finding probable cause, three or four patterns were present. One case discussed in *Howard* provides a useful comparison: *United States v. Harper*, 928 F.2d 894 (9th Cir. 1991). In *Harper*, the police searched a home looking for a parolee, David Harper. *Id.* at 896. Two factors favored probable cause. First, Harper possessed a key. The police saw Harper use a key to enter the home "once or twice"

---

[6] The Court finds that the officers who searched the Apartment were acting in good faith. Their testimony indicates they were not aware of the Ninth Circuit's legal definition of residence.

during surveillance. *Id.* Second, Harper gave the police reason to believe that he lived at the searched home. The police knew that Harper had lived with his family immediately before serving time in prison and knew that the home they wanted to search was leased to Harper's family. *Id.* They had observed Harper entering the home. *Id.* Also, the police saw cars belonging to Harper's known associates parked outside of the home. *Id.*

The Ninth Circuit held that the officers had probable cause - "but just barely." *Id.* at 896-97.[7]

By comparison, each of the *Howard* patterns presented a stronger argument for probable cause in *Harper* than in this case. Both McAdoo and Harper possessed a key to the searched residence, but McAdoo's possession is a weaker indication of residence.[8] McAdoo received one guest that may or may not have come to see him, while more than one of Harper's "known associates" visited him.

Even the two patterns "missing" in both this case and *Harper* provide a stronger case for suppression here than in *Harper*. Here, no person identified McAdoo as a resident of the Apartment. The anonymous tip in this case indicated that a "light-skinned black male" was selling cocaine from the Apartment, but did not claim that this "light-skinned" man lived there. This tip contrasts with the uncorroborated tip informing the police that Harper lived at the searched home. *Harper*, 928 F.2d at 896.

Finally, the narcotics officers who searched the Apartment were informed of McAdoo's reported address by a probation officer and McAdoo's driver's license, but failed to investigate that address. Although the police had no indication that Harper had reported a sham address, that is

---

[7] In *Harper*, Judge Kozinski warned the police about the danger of warrantless searches: There's a simple way for the police to avoid many complex search and seizure problems: Get a search warrant. Had they obtained a search warrant in this case – as they could well have – there would have been no motion to suppress, no hearing, no objection at trial and no thorny issues for us to resolve on appeal. But they didn't. 928 F.2d at 895.

[8] Harper, like McAdoo, may have possessed the key not because he lived at the searched home but because a family member lived there. *Harper*, 928 F.2d at 896. However, Harper had been known to live with family members immediately before serving time in prison, *id.*, which makes Harper's key a stronger fact in favor of probable cause than McAdoo's key.

1 only because they did not have an address on file for him. *Harper*, 928 F.2d at 895 ("[Harper's]
2 parole officer didn't have a current address for him and couldn't locate him."). Therefore, there was
3 no need to overcome the presumption of validity associated with a probationer's reported address.
4     In *Harper*, the police "just barely" had probable cause. Here, the facts are comparatively
5 weaker in every *Howard* pattern. Accordingly, the officers did not have probable cause to believe
6 that McAdoo lived at the Apartment, making their warrantless search unreasonable under the
7 Fourth Amendment. Evidence discovered because of an unreasonable warrantless search must
8 be suppressed. *Hudson*, 126 S. Ct. at 2163.
9 III.    RULING
10     Because the officers did not have probable cause, McAdoo's Motion to Suppress Evidence
11 is GRANTED.
12     IT IS SO ORDERED.
13 Dated this 6th day of March, 2008.                                          /S/

                                                                    _____
                                                                           S. JAMES OTERO
                                                                    UNITED STATES DISTRICT JUDGE